**BROWN v. NEW YORK CENT. R. CO. et al.**
**No. 658.**

District Court, E. D. Michigan, N. D.
Nov. 9, 1931.

Harry C. Milligan, of Detroit, Mich., for plaintiff.

Hewitt & Brooker, of Bay City, Mich., for defendants.

TUTTLE, District Judge.

This is a motion for a new trial, made by the defendants after the plaintiff had recovered a verdict herein based upon the Federal Safety Appliance Act (title 45, § 1 et seq., United States Code [45 USCA § 1 et seq.]). The sole question presented is whether the court erred in submitting the case to the jury instead of directing a verdict in favor of the defendants as requested by them.

The undisputed facts are as follows: The plaintiff, a yard brakeman in the employ of the defendant railroad company, hereinafter called the defendant, was engaged, with other members of a switching crew, in switching cars in the railroad yards of the defendant at Detroit, in making up an outbound train in interstate commerce. While they were attempting to couple a switch engine to a refrigerator car, which was standing alone on a side track, a defective coupler (found by the jury, and therefore assumed for the purposes of this opinion, to be in violation of the Safety Appliance Act) on such car prevented the coupling and caused the car to move along the track, which at this point was on a downward incline towards the railroad tunnel of the defendant under the Detroit river. Seeing it start to move away, and realizing that unless it could be immediately stopped it might cause disastrous consequences, the plaintiff at once sprang to the car ladder, mounted to the top of the car, and hurriedly reached up for the brake wheel, the only means of bringing the car to a stop. In so doing he came into contact with an overhead electric third rail from which he received an electric shock, causing him to fall to the ground and to sustain injuries for which he seeks damages in this action.

In view of the instructions of the court, of which no complaint is made by either party, and the verdict of the jury, the only question now involved is whether the court was justified in permitting the jury to find, as it did, that the insufficiency of the coupling was the proximate cause of the injuries so suffered

by the plaintiff. The defendant urgently contends (in forcible argument which has received full consideration) that the proximate cause of these injuries was not the defective coupling but the voluntary act of the plaintiff in allowing himself to come into collision with this overhanging rail, which act was an independent, intervening cause of such injuries, and that the danger of harm from such rail he had assumed as a risk of his employment. It is the claim of the plaintiff that the question whether, under all of the circumstances just mentioned, the defective coupling was the proximate cause of the injuries sustained, was properly submitted to the jury. After careful examination of the authorities, as applied to the facts disclosed by the present record, I reach the conclusion that the contention of the plaintiff in this connection is correct.

This is not a case, such as was the case of Reetz v. Chicago & Erie Railroad Co., 46 F. (2d) 50 (C. C. A. 6), cited by the defendant here, and other similar cases, in which the insufficient appliance merely created the occasion for the presence of the injured person at a place where he was injured by an intervening act or object so unconnected with, and independent of, such appliance as to make the latter a remote, not the proximate, cause of the injury suffered. In the present case the facts render applicable the settled rule of law that where the original act of the wrongdoer creates a situation, reasonably foreseeable, by which another person normally and reasonably is induced to commit an act that injures him, the original act of such wrongdoer constitutes the proximate cause of such injury.

The legal principles involved are the subject-matter of sections 13–15 of Preliminary Draft No. 41 of the Restatement of the Law of Torts of the American Law Institute. Section 13 of that draft is as follows: "The intervening act of a human being or animal which is a normal reaction to the stimulus of a situation created by the actor's negligent conduct is not a superseding cause which relieves the actor from liability for an injury caused to others thereafter."

As is explained in the "Comment" of the Institute following the section just quoted: "The principle stated in this Section applies to acts done by the person who is injured or by a third person or animals. It is enough that the act done be a normal reaction to the stimulus of the situation created by the actor's negligence."

Section 14, just mentioned, provides as follows:

"An act done by a human being under the impulsion of fear or other emotional disturbance created by the actor's negligent conduct is not a superseding cause of injury resulting to another therefrom."

Section 15 reads thus:

"The actor's negligent conduct which threatens harm to another's person, land or chattels is the legal cause of injury resulting from the normal (reasonable) efforts of the other or a third person to avert the threatened harm."

The explanatory comment on this section, in the Preliminary Draft of the Restatement already cited, is as follows: "This Section is a special application of the principle stated in Section 13. It applies not only where the injury is sustained by the person whose person, land or chattel is put in peril by the actor's negligence but also where the harm is sustained by a third person who is attempting to avert the threatened harm or who, being in the neighborhood, is injured by the efforts made to avert it."

The rule is accurately and comprehensively expressed in 45 Corpus Juris, beginning on page 926, in the following language:

"It is well settled that the mere fact that other causes, conditions, or agencies have intervened between defendant's negligence and the injury for which recovery is sought is not sufficient in law to relieve defendant from liability. In other words, an intervening cause will not relieve from liability where the prior negligence was the efficient cause of the injury. The test is not to be found in the number of intervening events or agencies, but in their character and in the natural connection between the wrong done and the injurious consequences, and if the injury is the natural and probable consequence of the original negligent act or omission, and is such as might reasonably have been foreseen as probable, the original wrongdoer is liable, notwithstanding the intervening act or event. * * * Thus, where a third person attempts to prevent the injury which would naturally have resulted from the negligent act of defendant and is injured while doing so, the original act of defendant remains the proximate cause."

Applying these rules and principles to the situation here involved, it seems clear that, bearing in mind the emergency, caused by this defective coupling, by which the plaintiff was suddenly confronted, the apparent need for

quick action by him to avert the threatened harm, and the normal, instinctive impulse on his part, in connection with the performance of his duty to his employer, to make a hurried effort to reach for the brake wheel without taking time or thought in cautious concern for his own safety, with resultant injury to him, there was presented a question, for determination by the jury, as to whether there was such a sequence of events between the violation of the Safety Appliance Act by the defendant and the subsequent conduct of the plaintiff, with the consequent injury, that such violation of the law was the proximate cause of such injury. Minneapolis, St. Paul & Sault Ste. Marie R. Co. v. Goneau, 269 U. S. 406, 46 S. Ct. 129, 70 L. Ed. 335; Cowen v. Ray, 108 F. 320 (C. C. A. 7); Donegan v. Baltimore & New York R. Co., 165 F. 869 (C. C. A. 2); Erie R. Co. v. Russell, 183 F. 722 (C. C. A. 2); Pittsburgh & Baltimore Coal Co. v. Hudak, 183 F. 543 (C. C. A. 3); Erie R. Co. v. Schleenbaker, 257 F. 667 (C. C. A. 6); Erie R. Co. v. Caldwell, 264 F. 947 (C. C. A. 6); Sandri v. Byram, 30 F.(2d) 784 (C. C. A. 6); Illinois Central R. Co. v. Siler, 229 Ill. 390, 82 N. E. 362, 15 L. R. A. (N. S.) 819, 11 Ann. Cas. 368; Liberty Mutual Insurance Co. v. Great Northern Railway Co., 174 Minn. 466, 219 N. W. 755; Glanz v. Chicago, Milwaukee & St. Paul R. Co., 119 Iowa, 611, 93 N. W. 575; 22 R. C. L. 145.

In contemplation of law, the situation is not substantially different from what it would be if the defective coupling in question had exploded and the force of the explosion had thrown the plaintiff against the overhanging rail.

The motion for a new trial must be denied, and an order to that effect will be entered.