CHICAGO, ROCK ISLAND AND PA-
CIFIC RAILWAY COMPANY, a
foreign corporation, Appellant,

v.

Thomas W. HOWELL and Dorothy
Howell, his wife, Appellees.

No. 9875.

United States Court of Appeals
Tenth Circuit.

Oct. 9, 1968.

John A. Johnson, Oklahoma City, Okl., for appellant.

Donald R. Hackler, McAlester, Okl., for appellees.

Before MURRAH, Chief Judge, and PHILLIPS and HILL, Circuit Judges.

MURRAH, Chief Judge.

In this diversity suit against the Railroad, the Howells claimed that the Railroad's passing train set the fire which caused the damage to their adjoining land and which proximately caused injuries to Mrs. Howell in her efforts to put out the fire. The jury found that the passing train did set the fire and assessed damages to the property and for Mrs. Howell's injuries, the amount of which is not in dispute on this appeal. The Railroad meets the critical issue fairly and squarely with the contention that the evidence is wholly insufficient as a matter of law to justify the inference that the Railroad's train set the fire and that the trial court, therefore, erroneously refused to direct a verdict or judgment n. o. v. If the Railroad does not prevail as a matter of law, it does not seek a new trial.

The Howells, of course, have the burden to affirmatively show that the passing train set the fire. While there is no eyewitness or direct evidence that the train set the fire, it has always been the law in Oklahoma in cases like ours that the origin of the fire may be shown by circumstantial evidence. St. Louis & S. F. Ry. Co. v. Shannon, 25 Okl. 754, 108 P. 401 (1910). And once the fire is satisfactorily traced to the passing train, Oklahoma's Prairie Fire Statute imposes strict liability for all consequent damages. 2 Okla.Stat. 748 (1961).

The competency and sufficiency of circumstantial evidence have been sustained in a variety of situations, but the common denominator seems to be a tender box right-of-way or a volatile adjacent structure, a favorable wind, a passing train capable of emitting fire-setting sparks, the absence of any other fire-setting agent, the nonexistence of any fire immediately before and the presence of a fire soon after the passage of the train. See Missouri, K. & T. Ry. Co. v. Jackson, 174 F.2d 297 (10th Cir. 1949); Midland Valley R. Co. v. Barton, 191 Okl. 359, 129 P.2d 1007 (1942); Schaff v. Coyle, 121 Okl. 228, 249 P. 947 (1926); St. Louis & S. F. Ry. Co. v. Consumers' Light & Power Co., 111 Okl. 151, 238 P. 434 (1925); Missouri Pacific R. Co. v. Lamb, 99 Okl. 132, 226 P. 91 (1924); St. Louis & S. F. Ry. Co. v. Shannon, supra; Kansas City, Ft. S. & M. R. Co. v. B. F. Blaker & Co., 68 Kan. 244, 75 P. 71 (1904); Kansas City, Ft. S. & M. R. Co. v. Perry, 65 Kan. 792, 70 P. 876 (1902).

The Howells rely upon these circumstances: the weather was dry; part of the right-of-way was overgrown with inflammable vegetation within several feet of the track; a wind was blowing away from the track toward the Howell farm; a witness testified that he had seen other trains in this immediate vicinity emit sparks from their wheels and stacks and from the loose spikes in the track; another witness testified that soon after the train passed his attention was called to smoke on or near the right-of-way and that when he arrived at the

scene about fifteen minutes later, he saw the fire jump the fireguard onto the Howell farm where it spread quickly.

Our case seems most like the old Kansas Perry case, supra, cited and quoted in the Oklahoma parent Shannon case, supra. And it is not materially different from Shannon itself or Barton, supra, which cites a number of Oklahoma cases in which the jury verdict for the landowner was sustained.

■ While the competency of the circumstantial evidence to prove the plaintiff's case is controlled by Oklahoma law, its sufficiency to go to the jury is controlled by federal common law. See Simler v. Conner, 372 U.S. 221, 83 S.Ct. 609, 9 L.Ed.2d 691; Gutierrez v. Union Pac. Railroad Co., 372 F.2d 121 (10th Cir. 1966); Christopherson v. Humphrey, 366 F.2d 323 (10th Cir. 1966); Basham v. City Bus Co., 219 F.2d 547, 52 A.L.R.2d 582 (10th Cir. 1955); Diederich v. American News Co., 128 F.2d 144 (10th Cir. 1942); F. W. Woolworth Co. v. Davis, 41 F.2d 342 (10 Cir.). Under the federal rule a directed verdict is authorized only when the evidence is all one way or so overwhelmingly preponderant in favor of the movant that the trial court in the exercise of its sound discretion would be required to set the verdict aside. See Texaco, Inc. v. Pruitt, 396 F.2d 237 (10th Cir. June 6, 1968); Christopherson v. Humphrey, supra; High Voltage Engineering Corporation v. Pierce, 359 F.2d 33 (10th Cir. 1966); United States v. Hess, 341 F.2d 444 (10th Cir. 1965). In Missouri, K. & T. Ry. Co. v. Jackson (an Oklahoma case), supra, this circuit sustained the competency and sufficiency of circumstantial evidence not materially different from this case and we would have no difficulty sustaining this verdict but for the testimony of the engineer of the passing train to the effect that he saw a fire burning in the vicinity of the right-of-way ahead of the train. The conductor also testified that a fire was burning when the caboose passed the same vicinity about two minutes later.

The Railroad argues with force and reason that the Howells' circumstantial evidence is conclusively overborne by this positive and uncontradicted testimony. If, of course, the fire was in the vicinity of the right-of-way before the train passed, the train did not set it. Thus, we can only conclude by its verdict that the jury simply did not believe the engineer or thought he was mistaken. Our lawsuit comes down to the fine point of deciding whether the jury may choose to disregard the engineer's testimony as corroborated by the conductor.

■ The fundamental rule which makes the jury the sole judge of the weight and credibility of testimony is subject to the caveat that testimony concerning a simple fact capable of contradiction, not incredible, and standing uncontradicted, unimpeached, or in no way discredited by cross examination, must be taken as true. And no judgment can be permitted to stand against it. See Chesapeake & O. R. Co. v. Martin, 283 U.S. 209, 51 S.Ct. 453, 75 L.Ed. 983; see also 62 A.L.R.2d 1191. We have consistently followed this precept. See Cundick v. Broadbent, 383 F.2d 157 (10th Cir. 1967); Perlmutters, Inc. v. Commissioners of Internal Revenue, 373 F.2d 45 (10th Cir. 1967); Nicholas v. Davis, 204 F.2d 200 (10th Cir. 1953); Rapid Transit Co. v. United States, 295 F.2d 465 (10th Cir. 1961); Zimmer v. Acheson, 191 F.2d 209 (10th Cir. 1951).

The Howells do not contend that the engineer's testimony was incapable of contradiction, but they do contend that it was "patently incredible" when viewed in the context of the physical facts. They point to the circumstances upon which they rely to make their case, i. e., the volatile condition of the right-of-way, the favorable wind, and the fact that the engine was the only known or suggested fire-setting agency in the area.

It is also suggested that the engineer's testimony is further discredited by the testimony of the neighbor who first saw the fire and by cross examination. The neighbor testified that when he arrived

at the scene, only one fire was burning—not two as stated by the engineer—and that the fire was south of the fireguard, not north and south as stated by the engineer.

The two versions are literally inconsistent, but the most that can be said of this discrepancy is that it reflects upon the accuracy, not the credibility, of the engineer. Considering the natural and tolerable variances in eyewitness testimony, we find it difficult to say that the witness was impeached by this inconsistency alone. After all, "men do not remember past transactions with exactness and * * * inconsistencies in bits of testimony may indicate truthfulness rather than falsehood." Bartlett v. United States, 10 Cir., 166 F.2d 920, 932.

But, even so, when the engineer's testimony is considered in totality of the circumstances, we think it was sufficiently impugned to justify submitting to the jury its accuracy as to time and place. On cross examination, the conductor of the train fixed the location of this particular fire as west of the creek on the Howell farm, where a fire had occurred four months earlier. When closely questioned concerning the exact location of this particular fire, the conductor was unable to remember whether the fire was east or west of the creek. While the engineer was more positive about the exact location, it is noteworthy that two fires did occur on the Howell farm near the Railroad at four month intervals (one in November, 1963, and this one in March, 1964). It is also of some significance that no report of the fire was made, and the engineer was not asked to recall the exact place of it until two months later. The fallibility of human memory being what it is, it is possible that the engineer could have been honestly mistaken about the date and exact location of this particular fire in relation to the previous fire in the same locality.

 As in most cases which turn upon the sufficiency of the evidence to make out a submissible case, this one is close and the result may be "subject to the human equation". Cf. Chicago, Rock Island and Pacific Railroad Company v. McFarlin, 10 Cir., 336 F.2d 1, with Union Pacific Railroad Company v. Lumbert, 401 F.2d 699 (10 CA July, 1968). The trial judge heard the engineer, appraised his testimony, and found it sufficiently vulnerable to go to the jury and we will not superimpose our second-hand judgment on the trial court unless we can say from our objective appraisal of all of the facts and circumstances that his judgment was clearly wrong. High Voltage Engineering Corp. v. Pierce, supra. We cannot so say.

The Railroad's secondary contention is that even though the train set the fire which caused the property damage, the evidence was insufficient to show that the fire was the proximate cause of Mrs. Howell's injuries and, therefore, the damages awarded for her injuries should be set aside.

 Oklahoma has clearly adopted the majority view that injuries incurred while fighting a fire are proximately caused by the fire. See St. Louis-San Francisco R. Co. v. Ginn, Okl., 264 P.2d 351 (1953). Thus, the only question is whether the evidence was sufficient to show that her injuries were incurred while fighting the fire. Again, we cannot say the evidence was insufficient as a matter of law.

The evidence on this subject is that Mrs. Howell testified she hurt her leg and back by slipping off a tractor and falling over a limb while fighting the fire. There is other evidence that soon after the fire, Mrs. Howell went to a local doctor because of pain in her right leg and occasional pain in her lower back; several months later she was examined at a reputable clinic, but no definite cause was discovered; the pain persisted for two years, during which time she continued to see a local doctor for treatment; again, she returned to the clinic but still no definite cause of pain was diagnosed; finally, three years after the accident, a myelogram study made at the clinic revealed a deformity in her back for which she underwent surgery. Her local doctor and her doctor at the clinic both gave

their opinions that Mrs. Howell's injuries were caused by the accidents incurred while fighting the fire. The clinic doctor said that it was not unusual in back injury cases for the person to have leg pain and that it was sometimes only after repeated observation over a period of time that the real problem in the back became apparent.

■ In rebuttal to this evidence generally favorable to Mrs. Howell, the Railroad points out the inordinate lengths of time between the injury and the diagnosis, the absence of any mention of back injuries in her initial claims for relief, the negative objective medical findings, the opinions of the psychiatrist about the causes of the symptoms, the meagreness of the medical records from which the doctors testified, and intervening falls as possible causes of the injuries. All these facts and circumstances, however, go to the weight and credibility of the evidence, which is for the jury to decide and certainly not this appellate court. See Meeker v. Rizley, 10 Cir., 346 F.2d 521; Anderson v. Hudspeth Pine, Inc., 299 F. 2d 874 (10 Cir.).

■ The Railroad does object to the admission of testimony by the clinic doctor based on his myelogram study because the study was not introduced into evidence. But this objection ignores the fact that a myelogram study is a fluoroscopic study and, therefore, not preserved in a photograph or X-ray which could be introduced into evidence. See O'Connell v. Westinghouse X-Ray Co., 261 App.Div. 8, 24 N.Y.S.2d 268, 270. We agree with the Railroad's contention that it is the law in Oklahoma that testimony based on an X-ray should not be admitted without the X-ray because testimony alone would not be the best evidence, Southwestern Cotton Oil Co. v. State Industrial Commission, 167 Okl. 294, 29 P.2d 122, but the best evidence rule does not apply here because there is no "best evidence". The doctor may testify from his personal knowledge supplied by a scientific instrument. See 3 Wigmore on Evidence § 795 (1940).

The Railroad also objects to the exclusion of testimony by the clinic doctor that the back injury could have been caused by Mrs. Howell falling several times in 1964 and 1965. The basis of this objection, however, is not clear from the brief or the record. Suffice it to say that even assuming prejudicial error was committed in this regard, the consequence could only be a new trial, which the Railroad does not seek.

Affirmed.